## GROESBECK v. BENNETT.

CANCELLATION OF PLEDGE—OVERREACHING.

Complainant, being indebted to defendants, gave them a note largely in excess of the amount owing, and secured it by pledge of a mortgage of much greater value than the amount of the note, with power to sell without notice. Upon a bill to cancel the pledge and foreclose the mortgage, a decree was entered that the pledge note be canceled, the mortgage foreclosed, and out of the proceeds defendants be paid the actual amount due them. *Held,* that the decree was proper, it appearing that the complainant was ignorant and unaccustomed to business, and that he was evidently overreached by the defendants, who were men of large business experience.

Appeal from Macomb; Eldredge, J. Submitted January 29, 1896. Decided March 31, 1896.

Bill by Henry C. Groesbeck against William C. Bennett and others to set aside and cancel a pledge of a certain mortgage, and to foreclose the same. From a decree for complainant, defendants Jay S. Bennett and Ira B. Bennett appeal. Affirmed.

*Sloman, Groesbeck & Robinson,* for complainant.

*Byron R. Erskine,* for appellants.

LONG, C. J. This bill was filed to foreclose a mortgage upon certain real estate situate in Macomb county, and to set aside and cancel a certain pledge of the same mortgage. The proofs were taken in open court, and a decree of foreclosure entered, together with an order setting aside the pledge. From this decree Jay S. Bennett and Ira B. Bennett, who were the pledgees named in the pledge, appeal.

109 MICH.—5.

The court below made findings of fact, with which the parties appealing seem, in the main, to be satisfied, but contend that the court was in error in setting aside the pledge, and in finding too small an amount due to the pledgees therein.   The facts as found by the court are, substantially, that on December 12, 1892, the complainant, being the owner of about 107 acres of land, entered into an agreement with John H. Barnes to sell the same to him at the price of $125 per acre.   This agreement was duly recorded, and by its terms $10 was paid down at the time of its execution, $1,000 was to be paid as soon as perfect abstract should be delivered, with a warranty deed, and the balance in 7 years, with privilege of making payments in sums of not less than $100.   On January 14th, complainant was paid $100, and he thereupon executed a receipt which recited that $100 was to be paid February 18, 1893, $100 on March 18th, and $100 on April 18th, following.   On January 14, 1893, Barnes entered into a written agreement of sale of the premises to the defendant William C. Bennett.   The price of the land was fixed in this contract at $175 per acre.   Two hundred dollars was paid down, and payments were to be made, $200 in 30 days, $4,000 in 60 days, when a deed was to be given, and a mortgage taken back for the balance of the purchase money, payable, $5,000 on or before 3 years, and the balance on or before 5 years, with interest at 6 per cent. annually.   On February 18th this contract was modified, and the purchase price of the lands reduced to $150 per acre.   This appears to have been in consideration of a payment of $500 by Bennett. In this agreement reference was made to the contract of Barnes with complainant, and it was agreed that, on payment of $2,275 by Bennett to Barnes, it was to be assigned to Bennett, and Barnes was to pay the $100 due the complainant March 18, 1893.   This agreement between Barnes and Bennett was subsequently changed, and he agreed to accept $1,500 in lieu of exacting $2,275.   In April, 1893, Barnes advised the complainant that he had

sold the land to Bennett, and notified him to meet with them for the purpose of preparing the deed. Bennett, at this meeting, was prepared to pay the complainant the unpaid part of the $1,000 payment, to wit, $690, and to pay Barnes the $1,500 going to him. At this meeting it appeared that the lands were incumbered by mortgages then held by defendants Chapoton and Crittenden, upon which was unpaid $3,425; and it was then arranged that complainant and Bennett should go to Mt. Clemens, and see Chapoton and Crittenden, and arrange to remove such incumbrances. Barnes at that time indorsed an assignment of his contract with complainant to Bennett, and Bennett deposited a certified check in favor of Barnes in the bank in escrow to await the result of the interview with Chapoton and Crittenden. The complainant then made a deed of the lands to Bennett, with full covenants of warranty, and, among other things, that the lands were free from all incumbrances whatever; the consideration being stated in the deed to be $16,050, and the number of acres 115. A mortgage at the same time was drawn from Bennett to the complainant for $12,375, to be paid on or before seven years from date, with interest at 6 per cent., payable annually. With these two papers the complainant and Bennett went to Mt. Clemens, and it was there arranged with Chapoton and Crittenden that complainant should pay interest upon the amount due to them to March 14, 1893, and give them his notes for the amount of their claim, to draw interest from March 14, 1893, and to assign them the mortgage taken from Bennett of $12,375 as collateral security to his notes. This arrangement was carried out, and complainant gave Chapoton one note for $1,525, due in six months, and one for $1,200, due in one year, and also gave Crittenden one note for $700, due in six months, —all drawing interest at 7 per cent. from March 14, 1893; and delivered to them the assignment of the mortgage made by Bennett as collateral security. Bennett paid to the complainant at that time, by check, $690, and

from which complainant paid to Chapoton and Critten-
den the interest on the amount their due to March 14,
1893.

Complainant claimed in the court below that under this
arrangement he was not carrying out the contract with
Barnes, but was selling to William C. Bennett pursuant
to a new arrangement, made on their way to Mt.
Clemens, by which Bennett was to pay him at the rate of
$150 per acre; that he gave the notes to Chapoton and
Crittenden and assigned the $12,375 mortgage really to
accommodate Bennett, who, he claimed, was to pay
the notes given to Chapoton and Crittenden as a part
of the purchase price of the land, and that Bennett so
promised.    The court found against the complainant
upon that proposition, saying:

" It is hardly possible that W. C. Bennett would have
paid Barnes the amount he did,—some $2,200,—and yet
pay complainant $690, and give a mortgage of $12,375,
and pay to Chapoton and Crittenden $3,425, aggregating
$18,690.   *   *   *   Complainant at that time must have
understood that he was to deed free from all incum-
brances, and consequently was bound to provide for the
release of the Chapoton and Crittenden mortgages."

The conclusion reached by the court below on this
question was that the parties were carrying out the
contract as it then existed between the complainant and
Barnes,—that is, the land was called 107 acres, and
the purchase price $125 per acre,—and that Chapoton and
Crittenden released their mortgages, and took the mort-
gage given by Bennett as collateral security to com-
plainant's notes, for the purpose of clearing the premises
of those incumbrances.   As the complainant did not ap-
peal, we need not discuss this finding, as the defendants
themselves are satisfied with it.

Some time after this arrangement was made, William
C. Bennett gave to his sons, Jay S. and Ira B. Bennett,
doing business as Bennett Bros., three mortgages, each
to secure his note for $8,000.   One of these mortgages

was given on this land. It is claimed by Bennett Bros.
that William C. Bennett was indebted to them from
$16,000 to $18,000, and that he was receiving advances
from them; that these mortgages were given as blanket
mortgages, to cover whatever debt he might incur to
them. The court below found this to be the fact.

Some time later, the Chapoton and Crittenden notes not
being paid, and just before their maturity, Bennett Bros.
purchased them, and they were indorsed over from Chap-
oton and Crittenden to Bennett Bros., without recourse.
The mortgage of $12,375 was also assigned to them.  De-
fendants Bennett Bros. claimed that this was done to pro-
tect their interest as mortgagees in the $8,000 mortgage
given them by William C. Bennett.  After Bennett Bros.
had acquired the claims of Chapoton and Crittenden, Wil-
liam C. Bennett commenced suit in the Wayne circuit court
against the complainant upon these notes.  This suit
Bennett Bros. afterwards discontinued, claiming that
William C. Bennett had no authority to commence it.
They then notified the complainant that he must take care
of these notes.  William C. Bennett appears to have in-
terested himself for Bennett Bros. to induce the com-
plainant to take care of them, and was informed by the
complainant that he could not do so, as at that time he
had been arrested for carrying on a saloon business without
paying a license in Detroit, and he needed $300 to pay the
license.  A meeting was then arranged between the com-
plainant and Bennett Bros. and William C. Bennett.  A
blank form of pledge note had been procured by Bennett
Bros. previous to this, and the complainant was induced
to sign such pledge note, which reads as follows:

"$4,095.40.          DETROIT, MICH., June 8, 1894.
"Six months after date, I promise to pay to Jay S. Ben-
nett and Ira B. Bennett, or order, four thousand and
ninety-five and 40-100 dollars, with interest at 8 per
cent. per annum.  Value received.
                    [Sig.]        "HENRY C. GROESBECK.
"And have deposited or pledged with them a certain
real-estate mortgage, dated April 8, 1893, executed by

William C. Bennett, of Detroit, Michigan, to me, and recorded in the register's office of Macomb county, said State, on the same day, in Liber 81 of Mortgages, at page 175, as security hereto; and I hereby authorize and empower the said Jay S. Bennett and Ira B. Bennett, in the event of the non-performance of this agreement, to sell said mortgage at public or private sale or otherwise, at their option, and without further notice to me.

[Sig.]        "HENRY C. GROESBECK.
"Witness:  [Sig.]  NELSON K. RIDDLE."

The court below found that this pledge was for a sum considerably more than the amount due on the Chapoton and Crittenden notes with the $300 added which Bennett Bros. advanced that day to complainant, and the court says:

"This, on the hearing, is claimed to have been made up of unpaid taxes on the land, and of some $49 and $25 advanced by W. C. Bennett. The rate of interest in the pledge note is fixed at 8 per cent. Complainant claims that, at the time, the rate read to him was 7 per cent., and he contends that the subscription to the note was not fully read to him."

The court, after commenting upon the manner in which this pledge was procured, with interest at 8 per cent., and the amounts that were added to make it $4,095.40, concludes that undue advantage was taken by Bennett Bros., and by the decree canceled and set aside the pledge note, awarding sale of the premises under the mortgage, but directing that the commissioner, out of the proceeds of such sale, pay to Bennett Bros. the amount paid by them to Chapoton and Crittenden for the notes, with interest at 7 per cent. to the time of payment over to them of the moneys by the commissioner, and also awarding to them the $300 advanced to the complainant, with interest at 7 per cent., and making these moneys and the interest thereon a lien upon the mortgage.

The only contention made by the defendants Bennett Bros. is that the court was in error in setting aside and

canceling this pledge note, and refusing to give them the full amount thereof. It would not profit any one to set out the testimony in full, which led the court to that conclusion. The testimony was taken in open court, and that court had an opportunity to see the witnesses, and judge of their truthfulness or untruthfulness, and, under the circumstances, was as able to judge of the merits of the controversy as are we. We have carefully examined the testimony, and from it and the surrounding circumstances, and the situation of the parties, are led to the conclusion that the court below was correct. The complainant was a man of but little education, somewhat improvident, and unaccustomed to business transactions. The property had come to him from his father, and he seems wholly incompetent to take care of and protect his own interests. We feel he was overreached in giving this pledge note. The defendants Bennett Bros. were apparently men of large business experience, and, with the defendant William C. Bennett, were able to get into their possession this pledge note, by the terms of which they had a right to sell at public or private sale this mortgage of $12,375, which was well secured, without any notice whatever to complainant. It is apparent that they had added a large amount to these notes over and above the amount actually their due.

The decree of the lower court will be affirmed, with costs of both courts to the complainant.

The other Justices concurred.